19-937-cv
*Marshall v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand twenty.

PRESENT:
>> ROBERT A. KATZMANN,
>>> *Chief Judge*,
>> RICHARD C. WESLEY,
>> MICHAEL H. PARK,
>>> *Circuit Judges*.

---

JOHN MARSHALL,

>> *Petitioner-Appellant*,

> v.                                                      19-937-cv

UNITED STATES OF AMERICA,

>> *Respondent-Appellee*.

---

| | |
|---|---|
| For Petitioner-Appellant: | ALAN LEWIS, Carter Ledyard & Milburn LLP, New York, NY. |
| For Respondent-Appellee: | TARA M. LA MORTE, (Won S. Shin, *on the brief*), Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney |

1

for the Southern District of New York, New York, NY.

Appeal from a judgment entered June 20, 2018 in the United States District Court for the Southern District of New York (Nathan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-appellant John Marshall appeals from the district court's judgment denying his petition for a writ of error *coram nobis*, as well as from the district court's order denying his motion to amend the judgment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Background and Procedural History

Marshall is the founder of Marshall, Tucker & Associates, LLC ("MTA"), a financial consulting firm. From 2000 to 2008, he was also a member of the board of directors for the International Securities Exchange ("ISE"). Over several months spanning 2006 and 2007, Marshall provided non-public information about a potential merger involving ISE to his partner at MTA, Alan Tucker, with the knowledge that Tucker planned to trade based on that information. Based on this conduct, Marshall was charged with and pleaded guilty to one count of conspiring to commit securities fraud in violation of 18 U.S.C. § 371 in 2008. He was sentenced principally to 18 months' incarceration and three years of supervised release.

In 2017, Marshall filed a petition for a writ of error *coram nobis*. In his petition, Marshall argued that he was actually innocent of the crime of conviction because he never expected to receive any benefit in exchange for the tips he gave Tucker. He further argued that his attorney provided ineffective assistance by failing to advise him of the "personal-benefit" element required to sustain a conviction based on tipping.

2

The district court denied the petition, concluding that Marshall's guilt was established by the fact that he knew Tucker, a longtime colleague, would trade on the information he provided. *See Marshall v. United States*, No. 17-cv-2951 (AJN), 2018 WL 3059652, at *3 (S.D.N.Y. June 20, 2018). The court further concluded that Marshall's ineffectiveness argument "necessarily fail[ed]" because Marshall "was not actually innocent of insider trading, or of a conspiracy to commit that offense." *Id.*[1]

Marshall then moved to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Marshall argued that the district court applied the wrong standard to his ineffectiveness claim and that it had failed to address his argument that his plea allocution was insufficient. The district court denied the motion, adhering to its earlier determination that Marshall's knowledge that Tucker would trade on the information provided, combined with their lengthy business relationship, sufficed to establish his factual guilt of the charged offense. *See Marshall v. United States*, 368 F. Supp. 3d 674, 677–78 (S.D.N.Y. 2019). The court also rejected Marshall's arguments relating to the sufficiency of his plea allocution on the ground that "insufficiency of a plea allocution alone" does not merit *coram nobis* relief. *Id.* at 678. Finally, with respect to ineffectiveness, the district court concluded that Marshall could not demonstrate prejudice because, "[i]n light of his potential liability and the weaknesses of his lack of benefit defense," Marshall had "not shown a reasonable probability that he would have chosen to proceed to trial had he known about the personal benefit requirement." *Id.* at 680. This appeal followed.

---

[1] Unless otherwise indicated, case quotations omit all internal quotations marks, alterations, citations, and footnotes.

## II.  Discussion

### A.  Legal Standards

"A writ of error *coram nobis* is an extraordinary remedy, typically available only when habeas relief is unwarranted because the petitioner is no longer in custody." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014). "A petitioner seeking *coram nobis* relief must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Id.* In reviewing the district court's decision, "[w]e review *de novo* the legal standards that the district court has applied but review for abuse of discretion the court's ultimate decision to deny the writ." *Doe v. United States*, 915 F.3d 905, 909 (2d Cir. 2019). "The question of whether a defendant's lawyer's representation violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo*." *Id.* at 910.

### B.  Ineffective Assistance of Counsel

Marshall principally argues on appeal that his attorney rendered ineffective assistance. "[I]neffective assistance of counsel is one ground for granting a writ of *coram nobis*." *Kovacs*, 744 F.3d at 49. "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). The government has never disputed that that plea counsel's representation was deficient. Moreover, it is clear that an objectively competent attorney would have advised Marshall of the personal-benefit element before permitting him to plead guilty. *See United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) ("[A]n individual may bring an ineffective assistance of counsel claim based on the argument that he lacked notice of the elements of the crime[.]").

4

We therefore focus, as did the district court in its thoughtful and full analysis, on prejudice. "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965. "As a general matter . . . a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea," because "[w]here a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Id.* at 1966. In assessing the likely prejudice to a misadvised defendant, a court must consider:

> (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty.

*Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013).

Evaluating prejudice therefore requires us to assess the strength of Marshall's potential "no-personal-benefit" defense. For a tipper to be criminally liable for insider trading, the insider must "benefit, directly or indirectly, from his disclosure. . . . [T]he disclosure of confidential information without personal benefit is not enough." *Salman v. United States*, 137 S. Ct. 420, 427 (2016). This requirement is not limited to pecuniary benefit, however; it includes intangible benefits and may be proven by "a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter," or "the tipper's intention to benefit the particular recipient." *United States v. Martoma*, 894 F.3d 64, 73–74 (2d Cir. 2017).

5

The government argues that the personal-benefit element was necessarily satisfied by Marshall's admission that he knew Tucker, his longtime business partner, would trade on the information that Marshall provided. It is true that "a jury can often infer that a corporate insider receives a personal benefit . . . from deliberately disclosing valuable confidential information without a corporate purpose and with the expectation that the tippee will trade on it." *Id.* at 79; *see also Gupta v. United States*, 913 F.3d 81, 86 (2d Cir. 2019) (per curiam) ("Where the recipient of the tip is the tipper's frequent business partner, the tipper's anticipation of a *quid pro quo* is easily inferable."). But such an inference is permissive, not mandatory. That a jury might draw the inference does not establish that it would.

However, the government also possessed direct evidence that Marshall and Tucker agreed to split the profits from the trades. Although the topic was not broached during Marshall's guilty plea, Tucker admitted to a profit-sharing arrangement during his own plea, as well as during a proffer session. The government represents that Tucker would have testified as such at trial. Thus, for Marshall's no-personal-benefit defense to succeed, he would have needed to discredit Tucker's explicit testimony that the two of them planned to share profits from the trades. That would likely have been a difficult task, for Marshall has not offered an especially convincing alternative explanation for his actions. Indeed, although Marshall now claims that he personally disliked Tucker and tolerated him only for business reasons, in some ways that makes the government's case stronger, because it seems less plausible that Marshall would have tipped off someone he disliked unless he, Marshall, expected to benefit personally.

There always remains the possibility that Marshall might have gone to trial anyway, confident that he could persuade the jury to believe his version of events rather than Tucker's. But we do not believe that there is a *reasonable* probability that Marshall would have seized this

modest chance at acquittal, given the risks inherent to doing so. "[I]n pleading guilty, [Marshall] earned a three-level reduction from his base offense level for acceptance of responsibility—a benefit that he would have lost had he gone to trial." *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005). Marshall's Guidelines range was 46 to 57 months. Adjusting his offense level upwards by three levels, while holding everything else constant, yields a range of 63 to 78 months—a significant, though perhaps not overwhelming, increase. Moreover, while Marshall pleaded guilty only to a conspiracy charge with a statutory maximum of five years, *see* 18 U.S.C. § 371, had he gone to trial the government would have been free to proceed on additional substantive insider trading counts carrying a statutory maximum of up to 20 years, *see* 15 U.S.C. §§ 78ff(a), 78j(b). The district court might not have imposed a sentence anywhere near this maximum, given the applicable Guidelines calculation. But it is nonetheless a risk that Marshall would have considered before rejecting the guilty plea. Given the shakiness of his no-personal-benefit defense, we do not think it reasonably likely that Marshall would have taken that risk.

In summary, we agree with the district court that, "[i]n light of his potential liability and the weaknesses of his lack of benefit defense," Marshall has "not shown a reasonable probability that he would have chosen to proceed to trial had he known about the personal benefit requirement." *Marshall*, 368 F. Supp. 3d at 680.

### C.       Sufficiency of the Plea Allocution

Marshall argues in the alternative that the district court's failure to inform him of the personal-benefit requirement violated Federal Rule of Criminal Procedure 11 and rendered his plea unknowing and involuntary.[2] A guilty plea entered in ignorance of a material element of the

---

[2] We reject the government's argument, that Marshall waived this issue by failing to present it to the district court. Although his petition could have more clearly framed the issue, it specifically noted that a defendant must be informed of the essential nature of the charge against him before he may enter an intelligent guilty plea. That suffices to preserve it for appeal.

offense of conviction is a constitutional violation that may be remedied through collateral proceedings. *See Bousley v. United States*, 523 U.S. 614, 618–19 (1998).

Nonetheless, reversal is not required. Because Marshall did not challenge the sufficiency of the plea allocution in his original criminal proceedings, we review for plain error, which requires (among other things) a showing that the error affected Marshall's substantial rights. *United States v. Lloyd*, 901 F.3d 111, 119 (2d Cir. 2018). "In order to demonstrate that a Rule 11 error affected his substantial rights, a defendant must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). Here, for the same reasons that he cannot show prejudice in the context of his ineffectiveness claim, Marshall has not demonstrated a reasonable probability that he would not have pleaded guilty even if properly notified of the personal-benefit element.

## III.    Conclusion

Because Marshall has not shown prejudice, vacatur of his conviction is not necessary "to achieve justice." *Kovacs*, 744 F.3d at 49. He is therefore not entitled to a writ of error *coram nobis*. In light of this disposition, we have no occasion to consider whether Marshall has satisfied the other prerequisites to obtain *coram nobis* relief.

Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk